MICHAEL B. HORROW (SBN 162917)
SCOTT E. CALVERT (SBN 210787)
DONAHUE & HORROW, LLP
1960 E. Grand Avenue, Suite 1215
El Segundo, California 90245
Telephone: (310) 322-0300
Facsimile: (310) 322-0302
Email: mhorrow@donahuehorrow.com
Email: scalvert@donahuehorrow.com

Attorneys for Plaintiff
KEITH SUTTON

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA – SACRAMENTO DIVISION

| | |
|---|---|
| KEITH SUTTON,<br><br>            Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY, SCIENTIFIC GAMES CORPORATION EMPLOYEE BENEFIT PLAN and DOES 1 THROUGH 10; INCLUSIVE,<br><br>            Defendants. | Case No.:<br><br>**COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN** |

– 0 –

COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

Plaintiff KEITH SUTTON alleges as follows:

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1337 and 29 U.S.C.§ 1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq*. (hereafter, "ERISA") as it involves a claim by Plaintiff for long-term disability benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2. The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. § 1391(b)(2), and the ends of justice so require.

3. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials.  Those avenues of appeal have been exhausted.  Plaintiff has exhausted all administrative remedies.

4. Plaintiff is informed and believes and thereon alleges that Defendant SCIENTIFIC GAMES CORPORATION EMPLOYEE BENEFIT PLAN is an employee welfare benefit plan established and maintained by Scientific Games Corporation, a corporation headquartered in Las Vegas, Nevada, to provide its employees with income protection in the event of a disability, and, is the Plan Administrator.

5. Plaintiff alleges upon information and belief that the Defendant, METROPOLITAN LIFE INSURANCE COMPANY ("METLIFE") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New York, and authorized to transact and transacting the business of insurance in this state.

6. The true names or capacities, whether individual, corporate, associate, or otherwise, of Defendants, DOES 1 through 10, are unknown to plaintiff who therefore sues said Defendants by such fictitious names.  Plaintiff is informed and

DONAHUE & HORROW, LLP

1  believes and on such information and belief alleges that each of the Defendants sued
2  herein as a DOE is legally responsible in some manner for the events and happenings
3  referred to herein, and will ask leave of this court to amend this complaint to insert
4  their true names and capacities in place and instead of the fictitious names when the
5  same become known to Plaintiff.

6      7.    Plaintiff KEITH SUTTON ("MR. SUTTON"), at relevant times is, and
7  has been, a resident of Nevada County, and citizen of the State of California.

8      8.    Plaintiff is informed and believes and thereon alleges that Defendant
9  METLIFE, issued Group Insurance Policy Number 102299 to Scientific Games
10 Corporation and the eligible participants and beneficiaries of the Plan.

11     9.    The Policy provides for Long-Term Disability benefits equal to 60% of
12 MR. SUTTON's Pre-disability Earnings, reduced by Other Income Benefits,
13 following a 180-day month Elimination Period.  Under the terms of the Policy,
14 should he remain disabled, MR. SUTTON would be entitled to benefits through
15 December 4, 2021.

16     10.    The Plan defines "Disabled" as follows:
17 Disabled or Disability means that, due to Sickness or as a direct result of
18 accidental injury:
19 - You are receiving Appropriate Care and Treatment and complying
20   with the requirements of such treatment; and
21 - You are unable to earn:
22 - during the Elimination Period and the next 24 months of Sickness or
23   accidental injury, more than 80% of Your Predisability Earnings at
24   Your Own Occupation from any employer in Your Local Economy.

25     11.    Prior to his disability, MR. SUTTON worked as a Senior Firmware
26 Engineer for Scientific Games Corporation.  Plaintiff's job duties included, but were
27 not limited to, performing high-level design and development of assigned embedded
28 related projects; creating high-level and detailed analysis on design of various

*Left margin:* DONAHUE & HORROW, LLP

components to be used in the gaming and system products; test, integrate, write, troubleshoot, and debug embedded software applications; and plan, code, test, demonstrate, and train fellow engineers on software engineering practices.

12. Unfortunately, as of May 18, 2018, MR. SUTTON was no longer able to perform the duties of his occupation and became total disabled as defined by the Plan to due pain associated with his diagnoses of intervertebral disc displacement with myelopathy, lumbar region and degenerative disc disease.

13. In an attempt to continue working despite the pain, restrictions and limitations associated with these diagnoses, in October 2016 MR. SUTTON began receiving facet injections approximately every 90 days.  Originally the injections would provide MR. SUTTON with approximately 50% pain relief for 90 days, but effectiveness started to wear off, which impacted his ability to continue working.  However, over time, the injections become less effective.  He had trouble meeting schedules and projects, as the pain significantly impaired his ability and focus.  Both his primary care physician and pain management specialist agreed that MR. SUTTON needed to cease work due to his increased daily pain.

14. Shortly thereafter, MR. SUTTON filed a claim for long-term disability benefits, along with supporting documentation including Attending Physician Statements and supporting medical records.

15. After reviewing the medical records and other claim forms, METLIFE agreed that MR. SUTTON was disabled and entitled to disability benefits.  By letter dated November 21, 2018, METLIFE informed MR. SUTTON that "[o]ur records show that you last worked on May 18, 2018 [and we] have approved your disability claim starting on May 21, 2018."  METLIFE further stated that "[y]our benefits are payable as of November 24, 2018."

16. In the following months, MR. SUTTON continued to provide METLIFE with documentation, including updated medical records, to support his ongoing claim.  For example, METLIFE received documents demonstrating that on February

15, 2019, MR. SUTTON underwent a laminectomy on his L5-S1 and S1-S2, and a posterior spinal fusion of his L4-5 and L5-1.

17. Each month, after reviewing MR. SUTTON's medical records, METLIFE approved his long-term disability claim paid MR. SUTTON the monthly long-term disability benefits he was due.

18. However, by letter dated October 15, 2019, METLIFE informed MR. SUTTON that it "determined that we are unable to approve benefits on your claim beyond October 15, 2019." METLIFE's conclusion was based on the opinion of a paid, "paper review" physician who did not examine MR. SUTTON to ascertain his true level of functional abilities, and did not properly credit reports of his ongoing, residual back pain.

19. MR. SUTTON requested an appeal of METLIFE's claim decision by letter dated November 7, 2019. In the letter, MR. SUTTON explained that he could not perform the physical activities that METLIFE's paid physicians opined he could perform, including standing four hours a day, walking four hours a day and sitting eight hours a day. He explained that those activities "are simply not possible for me to perform [and] had either of your reviewers examined me in person, I believe they would have reached a different conclusion and determined that I was unable to return to full-time work."

20. In further support of his appeal and claim, MR. SUTTON, provided updated medical records, which further confirmed his ongoing disability and entitled to benefits. For example:

- On October 24, 2019, Dr. Lombard, MR. SUTTON's primary care physician stated that "(He is) unable to kneel or crouch post knee replacements and he has no kneecap. He can walk only for 10 min and sit for 60 min., but not repeatedly more than 2 hours per day total. He is unable to concentrate when he is trying to do these activities."

- Dr Lombard also prescribed Norco pain medication to help manage MR. SUTTON's lower back pain, but was hesitant to increase the 10 mg per day dose to see if it would allow him to sit and stand for longer periods.
- On October 18, 2019, following an examination by Yanna Dugenny, PA, at Stanford Spine Center (where his February 2019 lumbar fusion surgery was performed), she concluded that MR. SUTTON can only "currently stand for 10 minutes at time, sit for 20 minutes at time, and walk for 15 minutes at time. In between he has to rest and use his recliner ... He has not been able to return back to work and still does not feel he is able to work full time with his limitations".
- On November 11, 2019 following a to Thomas Deurloo, PT, at Truckee Physical Therapy, he concluded that "morning pain continues to be fairly strong (7/10) when he first gets up.  Prolonged sitting and driving also cause him to have increased pain."

21.   MR. SUTTON explained that METLIFE's assertion that he could stand for four hours per day and sit for eight hours per day is unrealistic, especially given that "[t]he statements from my three medical providers show that I could, at best, tolerate two periods of 60 minutes sitting and 10 minutes standing, for a total of 2 hours per day. After that I need to sit in my recliner with a lumbar cushion and an ice pack under my lower back."  He further noted that Dr. Wood, his spine surgeon at Stanford stated that his recovery and the completion of new bone growth will not happen for a period of 12- 18 months after surgery, which was performed on February 15, 2019.

22.   By letter dated January 28, 2020, METLIFE informed MR. SUTTON that it was upholding its decision to terminate his long-term disability benefits as of October 16, 2019, despite the overwhelming evidence he presented supporting his ongoing inability to earn more than 80% of his pre-disability earnings from his own occupation as a Senior Firmware Engineer. .

COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN

23. METLIFE's conclusion was again supported only by the opinions of paper-review physicians, who did not examine MR. SUTTON. Indeed, despite MR. SUTTON's assertion that an in-person examination would demonstrate to METLIFE that he was unable to sit for eight hours, much less maintain the concentration and focus needed for his occupation, METLIFE did not request that he appear for an in-person medical examination or functional capacity examination by a physician of their choosing.

24. MR. SUTTON performed all of his obligations under the Policy and Plan. Despite this, to date, MR. SUTTON has not received all of the benefits he is entitled to under the subject Policy.

25. For all the reasons set forth above, the decision to deny benefits was arbitrary, capricious, wrongful, unreasonable, and irrational, sorely contrary to the evidence and contrary to the terms of the Plan.

26. As a direct and proximate result of the Defendants' failure to provide MR. SUTTON with disability benefits, MR. SUTTON has been deprived of said benefits from October 16, 2019 to the present date.

27. As a further direct and proximate result of the denial of benefits, MR. SUTTON has been required to incur attorneys' fees to pursue this action, and is entitled to have such fees paid by Defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g) (1).

28. A controversy now exists between the parties as to whether MR. SUTTON was and remains disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that he meets the Plan definition of disability and thus she is entitled to benefits from the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid MR. SUTTON from October 16, 2019 to the date of judgment herein, together with interest at the legal

– 7 –

rate on each monthly payment from the date it became due until the date it is paid;

2. An order determining that MR. SUTTON is entitled to future payments so long as she remains disabled as defined in the Plan;

3. For reasonable attorney fees incurred in this action; and

4. For such other and further relief as the Court deems just and proper.

DATED: April 3, 2020                    DONAHUE & HORROW, LLP

                                                 /s/ Michael B. Horrow
MICHAEL B. HORROW
SCOTT E. CALVERT
*Attorney for Plaintiff*